Johnson, J.
The evidence establishes the following facts :
1. The note and mortgage in controversy were the separate property of Jennie L. Faxon, given to her by her mother, Mrs. Osborn, in payment of a legacy from her father, and was, up to the 20th day of April, 1875, in her sole possession and under her exclusive control.
2. Bartlit & Smith had for many years been engaged in the banking business in the city of Columbus, where the plaintiff, McClelland, as well as Mrs. Osborn and Mrs. Faxon resided; that McClelland since 1861 was a customer and depositor in said bank, and in the habit of transacting banking business with said firm.; that Vm. C. Faxon, the husband of said Jennie L., was the cashier of said bank, intrusted by the firm with the transaction of business of the bank under the general direction of the firm, especially in the absence of Smith.
3. That on the 19th of April, 1875, said Wm. C. Faxon, at the instance of Smith, who expressed a strong desire to raise money to meet some pressing necessity of the bank, informed Smith that his wife owned this note and *293 mortgage, and that he believed he could get her to loan the same to the bank to enable it to get out of its present difficulty; that at the request of Smith he' asked his wife to loan said note to enable it to raise money temporarily, stating to her that they needed funds to help them for a short time, and he assured her the note would be safely returned within thirty days at the farthest. She consented to do so, and the next morning delivered the note, without her indorsement, and the mortgage, to her husband, who on the same day handed the same to Benjamin E. Smith, of the firm of Bartlit & Smith. Soon thereafter, at Smith’s request, Mrs. Eaxon, who was called into the bank for that purpose, indorsed the note iu blank; that in this transaction Eaxon acted entirely for the bank, and not in any sense for his wife.
4. That thereafter, until the 5th of April, 1877, two days after the note became due, it, with the mortgage, remained in the possession of said bank, never having been used for the purpose for which they were borrowed.
5. On the 15th of March, 1876, the firm of Bartlit & Smith was dissolved by the death of Bartlit, leaving Smith as survivor in possession of the property of the firm, with authority as such to settle and wind up its business, but without any authority to continue the business in the firm name. Notwithstanding this he did continue business in such firm name until after the transaction with plaintiff hereinafter stated.
6. That Mrs. Eaxon suffered or permitted said note and mortgage to remain in the possession of said firm and of said Smith, survivor, until after the same became due, but neither said firm nor said Smith, as survivor, had any ownership or interest therein, nor authority to hypothecate them to McClelland, but simply kept the same as the property of Mrs. Eaxon, aud as her bailees.
7. On the 5th of April, 1877, plaintiff, McClelland, being in the bank, was applied to by Eaxon, as cashier, to loan to the bank $4,000 of first Toledo railroad bonds, offering as collateral security this note and mortgage, stating *294 that the note would be paid. McClelland made no inquiry either of Smith or of the cashier, Faxon, or of Mrs. Osborn, the maker, as to title or ownership thereof, but took the same upon observing the blank indorsement of Mrs. Faxon on the note, and delivered the railroad bonds as a loan, supposing the note and mortgage were the property of Bartlit & Smith, and upon the faith and belief that Smith was the owner of the note. It did not appear, nor was there any injuiry as to when, Mrs. Faxon indorsed the note, but the fact was that she had done so April 21, 1875.
8. It appears that on the 21st of July, 1875, Bartlit & Smith executed a receipt for this note, showing that it was to be returned or accounted for to Mrs. Faxon, but as it was never delivered to her, and she had no knowledge of it or its provisions until the first trial of this case, it can not affect her rights, especially as it was not known to McClelland until after he acquired the note. It formed no basis of his action. He took the note upon the evidence alone of Mrs. Faxon’s indorsement and the presumption arising from possession.
As between Bartlit & Smith, or Smith, as survivor, and Mrs. Faxon, they were mere bailees or custodians, with no interest in the note. They borrowed the note temporarily, to be used to tide them over a present emergency. "While it retained the character of commercial paper, they never exercised the right to so use it. After it fell due they did, or rather Smith did so use it. In doing so Smith was guilty of a wrongful conversion. McClelland made no inquiry as to the ownership, but took the same, relying solely on the indorsement of Mrs. Faxon, but in good faith and for value, supposing Smith to be the owner. Smith did not indorse or guarantee the paper, nor was he asked to. No assurance was given, orally or otherwise, that the bank was the owner. Mrs. Faxon had never authorized this transaction, nor did she know of it, or in any way ratify or approve it.
McClelland does not ask for legal relief, but for a fore *295 closure of the mortgage, basing his right on the ownership of the note, and of the incident equity to the mortgage.
The defense of the maker, Mrs. Osborn, and t'he indorser, Mrs. Eaxon, is that plaintiff is not the owner; that the note is in fact the property of Mrs. Eaxon, and the latter, by cross-petition, asks that it be surrendered with the mortgage to her. It is urged that McClelland, having acquired the note after due, got no better title or right than Bartlit & Smith had. On the other haud, he claims that he acted in good faith upon the strength of the indorsement by the payee, and for value, without notice or knowledge of any equities, and that Mrs. Eaxon is estopped from claiming any thing as against him.
Let it be assumed that this note was negotiable after due, so as to confer upon the indorsee the legal title, and that prima fade he is entitled to recover.
At common law this authorized the indorsee to sue in his own name, and it was no defense to show he was not the owner.
By the code the action must be brought in the name of the real parly in interest, except in cases of express trust, etc. If, therefore, the indorsee is not the real party in interest, nor the trustee of the real owner of a negotiable note, his action may be defeated by showing that some other person is the owner.
As to choses in action assigned, suits at law could only be brought in the name of the assignor for the use of the assignee before the code, but since then the assignee is to be regarded as the holder of the legal title and entitled to sue in his own name, as was always the rule in equity. Allen v. Miller, 11 Ohio St. 374.
The same rule as to proper party plaintiff applies to commercial paper, unless the indorsee is protected as a holder for value acquired in the usual course of business before due.
In Edwards v. Campbell, 23 Barb. 423, which was an action on a note payable to bearer, the plaintiff had possession of the note, and on that ground obtained a judgment, *296 but this judgment was reversed on the ground that he was not the real party in interest.
So in Killmore v. Culver, 24 Barb. 656, the note was paj’able to T. or bearer; the answer denied the plaintiffs ownership, and this defeated the right of the holder to recover.
In City Bank v. Perkins, 29 N. Y. 554, this doctrine was denied, where the defense was interposed by the maker or indorser, the court saying: “As to anything beyond the bona fides of the holder, the defendant v)ho owes the debt has no interest.” It is added, however: “ It will be time enough to determine whether any other person has a better title when such person shall come before the court to claim the bills in question or their proceeds.” That is the exact thing Mrs. Faxon is doing in the case at bar.
. After much conflict upon this point the court of appeals of New York has definitely settled the question in favor of the right of the maker, or other person claiming title to intervene.
Hayes v. Hathorn, 74 N. Y. 486, was an action by the indorsee against the indorser of a negotiable note. He did not deny his liability, but defended on the sole ground that plaintiff' was not the owner, and alleging that another, to whom he had indorsed it, was. In the trial court evidence to prove this defense was excluded on the ground that, as he did not deny his liability, that was a question in which he had no interest, but the court of appeals held, that while possession of negotiable paper indorsed was prima facie evidence of title and ownership, yet a recovery could be defeated by showing that the plaintiff is not the real owner.
Our code, and that of New York, it will be seen, works a radical change in respect to the proper party plaintiff, not only as to non-negotiable, but as to negotiable, paper. In the case at bar Mrs. Osborn, the maker of this note, and Mrs. Faxon, if sued as indorser, might show that the plaintiff is not the real owner of the paper. By parity of reasoning Mrs. Faxon may intervene and assert her ownership.
The decisions which had prevailed before the code in *297 actions at law, which shut out such defenses, are overruled by the mandatory provision that in all actions the suit must be brought in the name of the real party in interest. If the indorsee is a bona fide holder for value of a note acquired before due, he is the real party in interest, and this and all other defenses are excluded, otherwise not.
In Swift v. Ellsworth, 10 Ind. 205, Ellsworth sued on a note made by Swift to one Rowe, and indorsed to plaintiff. The maker of the note, Swift, set up that the note had been indorsed by Rowe, the payee, to secure a debt of Rowe to plaintiff, which debt Rowe had since paid, and therefore the plaintiff is not the owner nor the real party in interest.
The Indiana statute, like ours (Revised Statutes, section 3172), authorized the transferee to maintain an action “ in his own name,” and their code, like ours, requires the suit to be brought in the name of the real party in interest, except in eases of express trust. The court holds that the real party in interest, as was formerly the rule in equity, must bring the action, subject to the exception of express trusts, and persons authorized by the statute, and that if any other than those thus authorized brings the action, an answer showing affirmatively the facts, is a good answer.
Thus it was held that this provision of the code, as to real party in interest, was made to override an express provision of the act relating to negotiable paper, which authorizes the transferee to sue in his own name.
Section 8172 Revised Statutes, which is but a copy of section 2 of the act of 1820 (1 S. & C. 862), authorizes the indorsee of negotiable paper to maintain.an action thereon in his own name to recover the money due on the same in his own name against the maker, drawer, or obligor; and section 3173 allows these parties to set up any defense they may have if such paper be indorsed or delivered after the day it became due. Such right of defense is expressly limited to “the maker, drawer, or acceptor,” and under the decisions prior to the code, the maker, drawer, or acceptor could only in such cases set up equities between the parties to the paper. They could not defend on the ground that *298 the plaintiff'was not the owner of the paper; neither could an indorser or third party, except in equity, intervene and claim the note.
The code changes this by declaring that the suit must, be in the name of the real party in interest, except in cases of express trust, created by statute or by contract. It does not, however, destroy the right of holders of commercial paper acquired in due course, before due, to cut off all defenses, including that of ownership. This exposition furnishes a key that will explain and reconcile many of the decisions seemingly in conflict.
Two questions only remain to be considered : Under the circumstances stated, is McClelland entitled to a foreclosure of the mortgage as a bona fide holder of the note under the rules applicable to commercial paper? and, if not, is Mrs. Faxon by her acts in the premises estopped from asserting her ownership of this note and mortgage?
1. As to McClelland’s rights as the holder of a negotiable note under the rules of the law merchant.
The significant facts in this case are that this note was the property of Mrs..Faxon; that Bartlit & Smith, and the survivor, Smith, were mere bailees for safe keeping; that while they might, before it was due, as apparent owners, have negotiated it to an innocent holder for value, though loaned for a special purpose only, yet they did not do so.
Under the terms of the loan by her they had express authority from her to use it temporarily, but not having' exercised that authority their continued possession was permissive merely and as between her and the bank, without authority to use it. If, in violation of their trust, they had negotiated it to an innocent holder before due, the doctrine that where one of two innocent parties must suffer, the one that so acts as to give rise to the injury, rather than the one who is not to blame, should be the loser, would apply, but this has no application to the purchaser of an after-due negotiable.instrument. In that respect the purchaser takes only the title which his transferrer or indorser had.
“ The holder, in order to acquire a better right and title to *299 the paper than his transferrer, must become possessed of it before it is overdue. For if it were already paid, by the maker, or acceptor, and had been left outstanding, it would be already discharged, and they would not be bound to pay it again to any one who acquired it after the period when payment was due. And if it were not paid at maturity, it is then considered as dishonored; and although still transferable in like manner and form as before, yet the fact of its dishonor, which is apparent upon its face, is equivalent to notice to the holder that he takes it subject to its infirmities, and can acquire no better title than his transferrer. The doctrine applicable to this subject has been admirably stated by Chief Justice Shaw, wdio says:
‘ Where a negotiable note is found in circulation, after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation ? Why is it not paid? Here is something wrong. Therefore, although it does not give the indorsee notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry ; he takes only such title as the indorser himself has, and subject to any defense which might be made if the suit were brought by the indorser.’”' 1 Daniel on Neg. Inst., § 782.
In Foley v. Smith, 6 Wallace, 492, it was declared to be the rule of law that he who takes an overdue and dishonored note, takes it incumbered with all the equities between the prior parties to it, and a person who takes such a note from one intrusted by the owner with the-collection of it only, can not come upon the mortgage given to secure it, where it will interfere with the rights of the real owner. The facts of this case are so nearly like the present as to leave no legal difference, and the opinion of the court covers all the points arising in this case. We therefore quote at length from it.
Mrs. Smith sold to McHatton a plantation-and took purchase-money notes for $70,000, secured by mortgage on the property. One of these notes was indorsed in blank and left with the Bank of Kentucky for collection before due. *300 The bank, by like indorsement, sent it to a bank in New Orleans to be collected. It was duly protested for nonpayment but .was allowed to remain in the bank at New Orleans for over seven months, when one McKnight, who was the agent of the Rank of Kentucky, took it from the New Orleans bank and sold and delivered it for full value to Eoley & Co. He transferred the note by a public notarial act in writing, by which he professed to assign the note -with all rights and remedies which the Bank of Kentucky might be entitled to as the holder of the note; that is, he did, in a formal manner, do exactly what Eaxon as cashier did in this case when he delivered this note and mortgage to McClelland. When the other purchase-money notes fell due, Mrs. Smith foreclosed the mortgage. The sale did not bring enough to satisfy the notes which she still held. Eoley & Co. intervened and asked that the note which they held and which first fell due might first be paid. The circuit court refused the relief and dismissed this claim. Mr. Justice Miller, after reciting the rule already quoted as to overdue paper, says:
“ Under this rule, the purchaser from the Bank of Kentucky could get no better title than the bank had when it sold. It is conceded that it had no title whatever. The appellants purchased of McKnight, as agent of the Bank of Kentucky, and as the note was not the property of McKnight or of the bank which he represented, appellants must show some authority for the sale from the real owner, or the sale is invalid. Such authority is claimed in argument to result from the possession of the note by McKnight. But if mere possession by the person who.proposes to transfer a note were sufficient authority, there would be no difference, as regards its negotiability, in a note before its maturity and after its protest. The appellants in this case relied upon the public act of transfer by McKnight, and if this was without authority their purchase was void.
“ The principle is invoked by appellants that in case of a loss of this kind, in which one of two innocent persons must suffer, that one should sustain the loss who most *301 trusted the party through whom the loss came. It is a sound principle, and its application to this case does not favor the appellants. If Mrs. Smith trusted the Bank of Kentucky with her note, it was for a purpose which was ended when the note was protested. By indorsing the note she did trust the bank with full power to dispose of it before due, although that was not intended, and she trusted the bank for the return of the money to her, if the money had been paid. This trust the law implied. But her trust ceased, except as to the mere possession of the note as a bailment, after the note was protested. It was the appellants who, with notice of the dishonor of the note, purchased it, who trusted the bank for the title, which it professed to sell. It is to be remembered that the intervention of appellants did not claim a personal judgment against McIIatton or Mrs. Smith on the note, but an appropriation of the proceeds of the sale to the payment of the note held by them.
“As Mrs. Smith is the real owner of the debt due from McHatton, evidenced by the note in the possession of the plaintiff's, there can be no equity in making her substantially pay the note out of the proceeds of the sale, or in postponing her just claim to that of appellants, who are not innocent holders without notice.”
In that case, as in this, the holder relied upon the transfer by the agent of the bank, though in that there was a formal transfer in writing by the agent, while in this the note and mortgage were merely delivered to McClelland, without inquiry, upon the blank indorsement of the payee. There,-as here, the principle was invoked that, where one of two innocent persons must suffer, that one should sustain the loss who most trusted the party through whom the loss came, but it was held that that principle did not favor Eoley & Co.; that while Mrs. Smith did trust the bank so far as to enable it to dispose of it before due, although that was not intended by her, yet this trust ceased, except as to the mere possession of the note as a. bailment, after it was dishonored, and that the purchaser who took *302 it with notice of the dishonor, himself trusted the bank for the title which it professed to sell, and, as Mrs. Smith was the real owner, the purchaser must show some authority for the sale from the real owner, or it is invalid.
In that case, as here, no personal judgment was sought against the maker or Mrs. Smith as indorser, but simply an appropriation of the proceeds arising from the sale of the mortgaged premises to the payment of the note. In a very recent case, Towner v. McClelland, 110 Ill. 542, Foley v. Smith was cited and approved. We quote the syllabus :
“ 1. Where the holder and owner of two notes indorsed in blank, the one overdue and the other not, placed them in the bauds of an agent to receive payment of them only, and the latter sold and delivered them to an innocent purchaser having no notice, in fact, of the agent’s want of authority to negotiate the same, it was held that tb e pureh aser, as to the note past due, was put ou inquiry to ascertain whether the agent had authority to negotiate the same, and took no title as to such note, but as to the note not due the purchaser acquired the legal title.
“ 2. While a purchaser in good faith of a note before its maturity, which is indorsed in blank, acquires the legal title, and may enforce his rights in a court of law, yet if the note is secured by mortgage on real estate, and he resorts to .a court of equity to foreclose the mortgage, that court will let in any defeuse which would have been good against the mortgage in the hands of the mortgagee.
“ 3. A mortgage, not being assignable at law, the assignee takes it subject to equities betweeu the parties; and the fact that he takes the note secured by the mortgage by assignment before maturity, free from all defenses at law, does not protect the mortgage against equitable defenses.
“4. The equitable assignee of a mortgage, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment. He may place the assignment on record, or give notice to tbe mortgagor, and thus protect his equi *303 table rights. If he does neither, a payment of the debt to the mortgagee — and there are no circumstances to put the mortgagor on inquiry as to the fact of the assignment — will satisfy the mortgage and defeat a foreclosure. But such payment to the mortgagee, after the legal transfer of the note before maturity, will not discharge the note, and it may be enforced at law.”
In that case, there were two notes secured by the mortgage, one due and the other not due at the time of the transfer. Both notes had been indorsed in blank for collection only, and were, as in the case at bar, fraudulently sold to one who paid full value. ■
There, as here, the purchaser made no inquiry of the maker of the note and mortgage, or of any one, but relied 'implicitly upon the possession of the note with the blank indorsement of the payee thereon.
Mr. Justice Walker, in delivering the opinion of the court, said the question was, did the purchaser acquire title to these notes, or either of them; .that as to the overdue note he was put upon inquiry,-and having failed to learn whether the agent and custodian had the necessary authority to sell, he must suffer the loss; as to the undue note, being a purchaser in good faith and for value, he could maintain an action thereon at law and collect the same; that the purchaser having in good faith and for a full consideration acquired this undue note, all his rights incident to commercial paper may be enforced in a court of law; but where resort is had to a court of equity by such holder to foreclose the mortgage, the court will let in any defense against the mortgage which would be good against the mortgagee.
It is sufficient for our present purpose to adopt that part of the decision relating to the overdue note, and to hold, as we do, that the purchaser acquired no title thereto. So much of that decision as relates to the undue note, which denies relief upon the mortgage, is but in accord with Bailey v. Smith, 14 Ohio St. 396, which holds that a bona fide indorsee of negotiable paper secured by mortgage is *304 not entitled to foreclose, where it appears that both note and mortgage were obtained by fraud; in other words, the mortgage being a mere chose in action, it is open in the hands of the holder to all equities subsisting against the mortgagee. That case has given rise to some discussion ; but as the case at bar relates to a past due note and the rights of its holder in the mortgage, and as it never was doubted that as to past due paper the indorsee only took the title of his assignor, the doctrine of Bailey v. Smith is not involved. And therefore we hold that as against the real owner McClelland’s equity is inferior to that of Mrs. Faxon; that mere possession after due by Smith did not enable McClelland to acquire any better title than Smith had, which was none at all, and that McClelland, having made no inquiry, was guilty of such laches as to deprive him of the'character of an innocent purchaser.
He, McClelland, took this paper on the faith of what appeared on its face, without any effort to ascertain the facts. He presumed from the mere fact of possession that Smith was the owner, or had authority to confer title.
Such a presumption attaches to paper until dishonored in favor of a bona fide holder, but after dishonor the transferee acquires only the assignor’s title. In a very recent case in Kentucky (Greenwell v. Haydon, 78 Ky. 332), the rule is thus stated: “ Whoever takes a hill or negotiable note after maturity, takes it so far as the title to, and integrity of, the paper is concerned, apon the credit of the person from whom he receives it. He gets whatever right and title that person had and no more.”
McClelland knew that the bank was a collection agency, as well as a dealer in commercial paper, and it is quite as probable, that paper found in the bank after due, was left there for collection merely, as that the bank owned it.
He did not even exact an indorsement or guaranty that it would be paid. This of itself is a suspicions circumstance, and as the bank was not the owner, he acquired no greater title or ownership than it had.
Had the bank been the bona fide holder before maturity, *305 the transferree, who became such after due, bona fide, would have succeeded to the rights of his assignor.
The presumption arising from possession is not a strong one. It is of the slightest nature, and open to be blown away by the slightest breath of suspicion. Daniel on Neg. Inst., § 784a, 785, and cases cited; Beall v. Leverett, 32 Ga. 105; Snyder v. Riley, 6 Pa. St. 164; see also Daniel on Neg. Inst., § 724a, and the numerous cases there cited.
2. Was Mrs. Eaxon estopped?
The claim is that, having indorsed this note before due, and left it with Bartlit & Smith, she clothed them with the indicia of title, and enabled them to negotiate it after due to a holder free from the rights of the real owner.
„ This doctrine, if conceded, abolishes all distinction between the rights acquired before due and after due as to such paper. The settled rule of commercial law is, the indorser, as well as the maker of such paper, can set up his rights and equities against a holder who acquired it after due from one having no interest.
This is the exact point in Foley v. Smith, supra, and the other cases above cited. The Bank of Kentucky, in Foley v. Smith, was clothed with all the indicia of ownership, as in this case, and yet Eoley, who acquired title for value in good faith after due, did so subject to the latent equities of Mrs. Smith.
"W here, however, the owner of choses in action (and dishonored commercial paper is subject to the same rule), by his affirmative act, has conferred apparent title and absolute ownership upon another, upon the faith of which it has been purchased for value, he is estopped from asserting his real title. This distinction is elaborately and ably considered in Pom. Eq. Jur., §§ 698-711, and notes; Pom. Rem., §§ 154-163. Thus the owner of stock, who exeecutes a transfer of the same in blank, with power of attorney authorizing a transfer on the books of the corporation, and places it in the hands of a broker for sale or uses *306 it as collateral, and the holder of this apparent title abuses his trust aud sells it to a bona fide purchaser for value, the owner is said to be estopped to claim the stock as against such holder.
This doctrine is fully and ably discussed, and the cases, especially in New York, where the principle has, in the interest of commerce, been extended beyond reason, as shown by Prof. Pomeroy, as above cited. 'He clearly demonstrates that this principle is not applicable to commercial paper, so as to change or modify the rights and liabilities arising thereon, when the only indicia of title or ownership is derived from a blank indorsement.
Mrs. Eaxon did no act purporting to clothe the bank with absolute ownership after due; nor even before due did she authorize the bank to use this paper, except for a temporary purpose merely. After the death of Bartlit, Smith was clothed with no power to use it at all. While it remained undue, he might, under the rules of commercial law, have sold to a bona fide purchaser for value, and she would have been estopped; yet, as she was the real owner, and after due did no act amounting to an estoppel, the doctrine does not apply.
Mr. Pomeroy conclusively shows that any other rule would estop every debtor, and give to choses in action all the qualities of commercial paper before due.
Combes v. Chandler, 33 Ohio St. 178, following the doctriue of McNeil v. Tenth Nat. Bank, 46 N. Y. 325, held that where the payee delivers non-negotiable notes, payable to himself, to another, in payment for a purchase made, arid the indorsee sells it before due, to a bona fide purchaser for value, the payee can not set up a fraud or failure of consideration of the assignee to defeat the right of such bona fide purchaser. This case goes to the verge; but when the syllabus is read, as it should be, in the light of the facts and the reasoning, it is not an authority against the conclusion reached in this case.
Combes, the payee aud assignor, intended to part with the title and ownership of the paper, for what he then supposed *307 was an adequate consideration. In analogy to the common-law rule applicable to personal property, that when such is the intention, and possession is delivered, a fraudulent vendee may convey absolute ownership on a bona fide purchaser for value, the court held that Combes having intended to, and having in fact conferred the title and absolute ownership of the paper and its possession upon Chandler, he, though a fraudulent vendee, could confer such title and ownership upon Woods, who was a bona fide purchaser. It was held that Combes so acted as to estop himself. He intended that Chandler should take full title and ownership, with power to alien absolutely. Chandler did no more than he was authorized to do by Combes, and the fact that the payee and indorsee afterward discovered that he was swindled, did not give him the right to defend against a bona fide holder, who purchased before due from the fraudulent vendee.
This distinction between the acts of Combes in the above case and of Mrs. Eaxon in the present case is so clear that it requires no comment. Mrs. Eaxon did no act intending to part with her title other than as accommodation indorser. She never intended to authorize Smith to transfer title and ownership to McClelland or any one else. No act of hers is shown that amounts to an estoppel. She was careless in allowing Smith to remain a bailee of the paper, but such bailee can confer no better title than he actually had. Ballard v. Burgett, 40 N. Y. 314. The same doctrine applies to conditional sales, when possession is delivered to the vendee. The vendor is not estopped to set up his title against a bona fide purchaser from the vendee when the conditions have not been complied with, though the owner has clothed the vendee with the indicia of absolute ownership. Sanders v. Keber, 28 Ohio St. 630.

Judgment reversed.