ITHIEL C. TOWNER *et al.*

*v.*

JOHN M. McCLELLAND.

*Filed at Ottawa May 19, 1884.*

1. ASSIGNMENT—*assignee of negotiable paper before and after ma-turity—sale by agent without authority—whether assignee protected—and of defences in equity.* Where the holder and owner of two notes indorsed in blank, the one over-due and the other not, placed them in the hands of an agent to receive payment of them only, and the latter sold and delivered them to an innocent purchaser having no notice, in fact, of the agent's want of authority to negotiate the same, it was *held,* that the purchaser, as to the note past due, was put on inquiry to ascertain whether the agent had authority to negotiate the same, and took no title as to such note, but as to the note not due the purchaser acquired the legal title.

2. While a purchaser in good faith of a note before its maturity, which is indorsed in blank, acquires the legal title, and may enforce his rights in a court of law, yet if the note is secured by mortgage on real estate, and he resorts to a court of equity to foreclose the mortgage, that court will let in any defence which would have been good against the mortgage in the hands of the mortgagee.

3. A mortgage, not being assignable at law, the assignee takes it subject to equities between the parties; and the fact that he takes the note secured by the mortgage by assignment before maturity, free from all defences at law, does not protect the mortgage against equitable defences.

4. The equitable assignee of a mortgage, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment. He may place the assignment on record, or give notice to the mortgagor, and thus protect his equitable rights. If he does neither, a payment of the debt to the mortgagee,—and there are no circumstances to put the mortgagor on inquiry as to the fact of the assignment,—will satisfy the mortgage and defeat a foreclosure. But such payment to the mortgagee after the legal transfer of the note before maturity, will not discharge the note, and it may be enforced at law.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding.

On October 21, 1870, Edward S. Wilcox and wife sold and conveyed to Ichabod S. Bartlett ten acres of land in the city of Elgin, for $3600. Bartlett paid in cash $1000, and executed his four notes for the balance,—two notes of $500 each due in one year, $800 due in two years, and one for $800 due in three years after date, all with ten per cent interest, and secured by a mortgage on the land, of the same date, which was recorded. On November 15 following, Bartlett paid the two $500 notes, and the interest on all the notes, to Edward S. Wilcox, the payee, to October 21, 1871, and subsequently divided the land into forty lots, and recorded a plat thereof. On or about October 21, 1871, Edward S. Wilcox sold and assigned the two unpaid notes of $800 each, to his brother, John S. Wilcox, and at the same time executed a release of the mortgage, and delivered the notes, mortgage, release and assignment to John S. Wilcox. Neither the release nor the assignment was recorded.

On December 1, 1871, Bartlett sold to Hiram Ainsworth, for $500, lots 5, 6 and 7, and the south-east half of lots 3 and 4, and on the same day sold to James S. Schoonhoven, for $840, lots 1 and 2, and the north-west half of lots 3 and 4. The Ainsworth deed was filed for record on December 6, 1871, and the Schoonhoven deed on May 7, 1872. In the spring of 1873, Ichabod S. Bartlett, by contract in writing, sold the remaining lots to James Coleman, subject to the mortgage on the land securing the $1600 and the interest due on the notes, the payment of which Coleman assumed. This contract having been lost without being recorded, was proved by parol evidence.

In September, 1873, Coleman advertised the lots sold to him, for public sale on the 27th of that month, for one-third cash, one-third in one year, and one-third in two years, the unpaid two-thirds to draw interest at six per cent, and be secured by mortgage on the lots sold. Prior to the sale it was arranged between Coleman, Bartlett and John S. Wilcox,

that the latter should place the two $800 notes, the mortgage, release and assignment, in the hands of John G. Kribs, an attorney at law in Elgin; that when the lots were sold at auction, Bartlett should execute deeds therefor to the purchasers, and place them in Kribs' hands; that Kribs should procure an abstract of title, and receive the money and notes and mortgages from the purchasers, deliver their deeds to them, and from the proceeds of the sale pay, first, to John S. Wilcox the amount of principal and interest on the notes, being $1760; second, retain $50 for his services; third, pay in money or notes to Bartlett the amount remaining due to him from Coleman, being about $700; and lastly, turn over to Coleman the remaining proceeds of the sale. Wilcox left his two $800 notes with Kribs for payment, as a matter of accommodation to Bartlett. Under this arrangement John S. Wilcox placed in Kribs' hands the two $800 notes, the mortgage and release. . When these notes were originally assigned by E. S. Wilcox, he indorsed them in blank, and some time thereafter, and before they passed out of the possession of John S. Wilcox, the latter wrote the words "without recourse," over the indorsements; but he testified that he had no thought that the notes were to be assigned or negotiated by Kribs, and that he never authorized Kribs to assign the same.

On September, 1873, the larger portion of the lots were sold at auction. Many persons were present at the sale, and Coleman stated to them publicly that the title to the lots was clear of the $1600 and interest due on the Wilcox mortgage; that the mortgage, notes and release had been placed in Kribs' hands, to be paid from the proceeds of the sale. The purchasers either examined the abstract of title and the release, or procured attorneys to do so for them, and were informed by Kribs that the mortgage was to be paid and cancelled from the proceeds of the sale. Lots 15, 17, 18, 19, 20, 21, 22, 23, 24, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39

and 40 were sold at the auction, and the aggregate of the consideration of the deeds was $3765, of which one-third was paid in cash, and the remaining two-thirds was secured by notes and mortgages running directly to Bartlett.

On October 10, 1873, Bartlett, Coleman and Kribs met, and Bartlett executed deeds for the lots to the purchasers, and placed them in Kribs' possession, for delivery upon payment, and the giving of notes and mortgages for the deferred payments; and it was then agreed that from the cash proceeds of the sale Kribs should pay Wilcox the amount of his notes and interest, and that he should retain $50 for his services, and from the remaining proceeds pay to Bartlett the amount due him, in accordance with the previous arrangement between them and Wilcox. Kribs on this occasion handed Bartlett the full release of the mortgage, who, after examining it, passed it back to Kribs, and requested him to put it on record, which Kribs promised to do. Bartlett also asked Kribs where his notes were, and was told that they were filed away with his papers, and that the release was kept out to show purchasers, and Bartlett told Kribs to take care of the notes and leave them with his papers.

Shortly after October 10, 1873, Kribs delivered the deeds to the purchasers, and received from them the money and notes due thereon. Kribs received between $1800 and $1900, and on the 13th of that month he paid John S. Wilcox $1000, and before the 21st of the same month he paid to Wilcox $1760, as the full amount of principal and interest unpaid on the notes. Bartlett received of the notes and mortgages a sum sufficient to pay him the balance due him from Coleman, and the remainder of the proceeds, less $50 retained for services, was turned over to Coleman, who left the same with Kribs, to be sold for him. Bartlett was never able to get a settlement with Kribs for his notes. Kribs' office was burnt, and he pretended that the Wilcox notes were burned, and in 1875 he was arrested for obtaining them of the complainant by the

confidence game, and for other crimes, was tried and con-
victed of the crime of larceny, and sentenced to the peniten-
tiary.   In the fall of 1875, after Kribs' arrest, Bartlett for
the first time learned that the two $800 notes were in the
possession of John M. McClelland, the defendant in error.

It appears from the complainant's testimony, that about
October 9, 1873, Kribs applied to McClelland, and offered to
sell him these notes, informing him that they were secured
by mortgage on real estate.   At this time one of the notes
was nearly a year over-due, and the other would mature in
eleven days.   McClelland made no inquiry of the maker of
the notes and mortgage, or of any one, and never saw the
mortgage itself or had it in his possession, and took no
assignment of it, but relying implicitly upon the statements
of Kribs, paid him $1000 on that day, and on the 22d of the
same month paid him $600, and took the notes at a discount
of $30, and held them for more than two years, and until
Kribs was arrested, without making any effort to collect
them, during which time Kribs had been paying McClelland
the interest and an annual bonus of $15, to let the notes run.
During this transaction E. S. Wilcox, at the request of Kribs,
on the representation of Kribs that the original release had
been mislaid, executed two partial releases of the mortgage
as to lots 10, 12, 14, 15, 16, 17, 19, 21, 22, 23, 30, 31, 32,
33, 36 and 37, which were recorded.   Neither Bartlett nor
J. S. Wilcox had any knowledge that such releases were
being used.

On December 13, 1875, McClelland, the defendant in error,
filed the bill in this case in the circuit court of Kane county,
against Bartlett and all of the purchasers and owners of the
lots so sold, praying that these releases be cancelled, and that
a decree of foreclosure be made against all of the lots for the
amount due on the Wilcox notes.   On a hearing the court
dismissed the bill, declaring the mortgage cancelled, accord-
ing to the prayer of a cross-bill filed.   From this McClelland

appealed to the Appellate Court for the Second District, which reversed the decree of the circuit court, and remanded the cause. (*McClelland* v. *Bartlett et al.* 3 Bradw. 481.) On the return of the cause to the circuit court the bill was dismissed as to some of the defendants, new parties were made defendants, amended bills and answers filed, and additional proofs taken. On the second hearing, at the October term, 1882, a decree was again made dismissing the bill, and granting the relief asked in the cross-bill, to the extent of declaring the mortgage paid. McClelland appealed from this decree to the Appellate Court, which, on July 27, 1883, reversed the decree of the circuit court, and remanded the cause to that court, with directions to enter a decree of foreclosure of the mortgage for the full amount of principal and interest due on both $800 notes, against lots not specially released, being lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 13, 18, 20, 24, 25, 26, 27, 28, 29, 34, 35, 38, 39 and 40, to be sold upon such decree in the inverse order of their alienation, and that this bill be dismissed as to the other parties,—the owners of the lots in the two releases. The plaintiffs in error are interested in part of the lots held liable to the mortgage, and they bring the case here by writ of error, to reverse the decree of the Appellate Court.

Mr. R. W. RANSTEAD, for the plaintiffs in error:

The proofs show that the mortgage has been released as to all the property. The circumstances under which the complainant took the notes were sufficient to have put him on inquiry, which would have led directly to a full knowledge that they were paid, and of the fraud perpetrated on him.

The authority given to Kribs to receive payment of the notes, conferred on him no power to negotiate them. *Ryhiner* v. *Feickert,* 92 Ill. 311; *Thompson* v. *Elliott,* 73 id. 221; *Padfield* v. *Green,* 85 id. 529; *Ames* v. *Drew,* 31 N. H. 475; Story on Agency, secs. 98, 99, 126.

Complainant knowing that Kribs held the notes as agent, and not as owner, was required to ascertain the extent of his authority. (*Williams* v. *Merritt*, 23 Ill. 626.) The fact that one of the notes was over-due nearly one year was sufficient to put him on inquiry. Besides, the possession of the lots by Coleman and the other purchasers was notice of all their equitable rights. *Doolittle* v. *Cook*, 75 Ill. 354; *Small* v. *Stagg*, 95 id. 39; *Brainard* v. *Hudson*, 103 id. 218.

McClelland, as the assignee of the notes, took the mortgage subject to all equities between John S. Wilcox and Bartlett, and has no greater right than Wilcox would have to enforce the security. The mortgage not being negotiable paper, the purchaser takes it subject to all equities in favor of the mortgagee and his assigns. *Olds* v. *Cummings*, 31 Ill. 139; *Haskell* v. *Brown*, 65 id. 29; *Bryant* v. *Vix*, 83 id. 12; *Ogle* v. *Turpin*, 103 id. 148; *Silverman* v. *Bullock*, 98 id. 11; *Melendy* v. *Keen*, 89 id. 404; *White* v. *Sutherland*, 64 id. 186; *Walker* v. *Dement*, 42 id. 277; *Keohane* v. *Smith*, 97 id. 156.

Mr. R. N. BOTSFORD, for the defendant in error:

It is customary in the transfer of a mortgage, for the mortgagee to pass a release to the purchaser, to be delivered upon the payment of the debt; and such will not operate to extinguish the mortgage lien before payment and delivery. *Flower* v. *Elwood*, 66 Ill. 438.

The purchasers of the unreleased lots do not occupy the position of innocent purchasers. They knew of the mortgage, and trusted Kribs, as their agent, to have the same released. Assuming that Kribs had defrauded or deceived Bartlett and Coleman, he was their agent, and intrusted with their affairs, and he who without intentional fraud has enabled a person to do an act which must be injurious to himself or to another innocent party, must suffer the injury. Story on Agency, sec. 127.

The notes being in Kribs' possession, indorsed in blank, were *prima facie* his property, and his transfer conveyed a good title to complainant. *Palmer* v. *Gardner*, 77 Ill. 143; *Jewell* v. *Cook*, 81 id. 260.

No case has been cited, nor can any be found, where the doctrine of equitable defences against the foreclosure of a mortgage has ever been interposed to relieve a party who had placed money in the hands of his own agent,—or, in a case like this, to pay his mortgage indebtedness,—to relieve such party from the folly of allowing his agent to hold the notes secured by mortgage, as an accommodation to such mortgagee in paying them, and then paying to his own agent, without requiring the production of the notes. *Morris* v. *Preston*, 93 Ill. 215; *Keohane* v. *Smith*, 97 id. 156; *Miller* v. *Larned*, 103 id. 562.

Mr. JUSTICE WALKER delivered the opinion of the Court:

What are the rights of the parties on the facts in this case? Did defendant in error acquire title to these notes, or either of them, when he purchased of Kribs? As to the note overdue, we think not. The case of *Foley* v. *Smith*, 6 Wall. 492, was where the payee of a note left it with a bank for collection. It was indorsed in blank, and not having been paid at maturity, an officer of the bank, after it was due, fraudulently sold the note, and it was held that the note, being over-due, and the bank having no power to sell it, the purchaser took no title to the note,—that the note being dishonored by nonpayment at maturity, the purchaser was put on inquiry to ascertain whether the bank had authority to sell it, and failing to make inquiry to learn the fact, he was chargeable with bad faith, and took nothing by his purchase. That case is in point in this. Here, Kribs had no power to sell that note. It was over-due, and that put defendant on inquiry, and having failed to learn whether Kribs had necessary authority to sell the note, he must suffer the loss. The other note, not

being due when he paid the $1000, and it was delivered to him, depends on a different principle. He found the note in circulation and negotiable by delivery. Being indorsed in blank, and not due, he acquired title by the purchase and delivery, as there was no notice or anything to put him on inquiry. The statute expressly provides that purchasers of negotiable paper not due, and without notice, shall be protected against defences of payment by the maker. Here, this note was not due, and defendant in error purchased without notice, and as against the maker he took it free from the defence of the after-payment by Bartlett to Wilcox before the note matured. There is no question that Bartlett paid Wilcox in good faith, nor is there any that defendant in error acted in equally good faith, and the loss must fall on one of two innocent parties. The equity of defendant in error is manifestly equal to that of Bartlett, and where the equity is equal the law must prevail,—and that maxim applies in its full force in this case as to this latter note. Defendant had, for a full consideration, acquired, as we have seen, the legal title, which must turn the scale in his favor. Then, defendant in error having purchased the note in good faith, before maturity, and holding the legal title, all of his rights incident to commercial paper may be enforced in a court of law; but where resort is had to a court of equity by such holder, to foreclose the mortgage, that court will let in any defence which would be good against the mortgage in the hands of the mortgagee. (*Olds* v. *Cummings*, 31 Ill. 188.) It therefore follows, that where the mortgage is transferred in equity by the assignment of the note to which it is incident, the assignee of the mortgage is not protected, as he is with the note acquired in good faith before maturity.

A mortgage not being assignable at law, the assignee takes it subject to all equities between the parties. The fact that he takes the note by assignment, before maturity, free from all defences at law, does not thereby protect the mortgage

against equitable defences,—that applies alone to negotiable paper, and not to equitable assignments. Not only so, but where a mortgage is assigned, and the mortgagor without notice pays the payee, who has parted with the note, that will discharge the mortgage, and in a suit to foreclose, such payment may be set up in bar of a decree for its foreclosure. The mortgagor, to release himself from liability on his note, must see that he pays the money to the holder of the note, who has received it by assignment before maturity, but not so to discharge the mortgage, because it is not assignable at law. The equitable assignee, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment. He may place the assignment on record, or give notice of the assignment to the mortgagor. Here defendant in error did neither, nor did the mortgagor have any notice, nor was there anything to put him on inquiry. It follows that the mortgage was satisfied by the payment by Bartlett, through Kribs, to Wilcox.

The decree of the Appellate Court is reversed, and the cause remanded.

*Decree reversed.*