## GERHARD W. GARRELS, IMPL'D G. W. CONE
### v.
## GEO. C. MEYER, E. MEYER, A. F. BANDELIER AND H. R. MORTEN.

*Foreclosure of Trust Deed—Alleged Agreement for a Release between Subsequent Purchaser and Agent of Holders of Notes Secured—Review of Evidence—Agency, not Sustained.*

Upon a bill to foreclose a trust deed of lands, forty acres of which are claimed by a subsequent purchaser who claims to have paid a certain part of the purchase money due the maker of the trust deed to the agent of the holder of the notes secured thereby, upon an agreement with said agent to procure the release of said forty acres, it is held, upon a review of the evidence, that the agency claimed is not established thereby.

[Opinion filed January 8, 1887 ]

APPEAL from the Circuit Court of Marion County; the Hon. AMOS WATTS, Judge, presiding.

Statement of the case by WILKIN, P. J.   This was a chancery proceeding to foreclose a trust deed. The bill avers that on the 3d day of February, 1880, George C. Meyer and wife executed to F. Ryhiner & Co., their four promissory notes, aggregating in amount $3,500, due five years after date, with eight per cent. interest payable semi-annually at the office of F. Ryhiner & Co., their receipt therefor to be good and valid against any subsequent holder of such notes.   The principal also payable at the office of F. Ryhiner & Co., sixty days before maturity of said notes.   On the same day said Meyer and wife executed and delivered to one Adolphus F. Bandelier, as trustee, a deed of trust to secure the payment of their said notes on real estate in Marion County, Ill., George W. Cone being named as the successor in trust of Bandelier in case of his death, removal, etc.

On the 23d day of March, 1880, F. Ryhiner & Co. assigned all of said notes to Gruner, Haller & Co., of Berne, Switzerland.   Subsequently Gruner, Haller & Co. assigned them to different parties, and they to appellant Garrels, who, with George W. Cone, successor in trust, etc., are complainants in the bill.   Hugh P. Morton, one of appellees, is made a party defendant, the bill alleging that he claims some interest, which, if any, is junior to and subject to their lien.   He alone answers, and so much of his answer as is material to be considered in deciding this case is as follows : By his answer he admits the execution of said notes and mortgage, and also the several assignments of said notes as stated in the bill of complaint, and that the complainant Garrels is the legal holder of said notes as stated in the bill, avers that he is the owner in fee of part of the lands described in the bill, and that his interest therein is not subject to the lien of said deed of trust or of the complainant Garrels as the holder of said notes.   That the complainant Cone is now and for more than six years last past

has been engaged in loaning money for different persons, and that said Cone procured the loan of said Ryhiner & Co. to the defendants, George C. and Elizabeth Meyer, mentioned in the bill, and that he acted as the agent of said Ryhiner & Co. in negotiating said loan *and also the agent of the complainant Garrels in purchasing the said notes, collecting interest thereon and receiving payments, and generally acting as the agent of said Garrels, securing loans and collecting moneys for said Garrels. That in the year 1883, and while said Cone was such agent of said Garrels us aforesaid,* the respondent and one Wyatt were about purchasing of said Meyer some 400 acres of land, among which land was the said above described forty-acre tract. That said Cone being anxious to collect from said Meyer the moneys coming from them to *said Garrels on the notes and trust deed* in the bill of complaint mentioned, and to induce this defendant to make such purchase, agreed with this defendant, in consideration that $1,200 out of the purchase money which this defendant and said Wyatt were to pay to said Meyer for said 400 acres of land, should be paid on said indebtedness of said George C. and Elizabeth Meyer *to said Garrels, said Garrels would have the said trust deed released from the said forty acres* of land. That in pursuance of said agreement the defendant and said Wyatt purchased of said George C. Meyer 400 acres of land among which were the above described forty acres for $4,800, and which said forty acres were then and there conveyed by said George C. Meyer and wife by warranty deed, and the defendant then and there took possession of said land, and from thence hitherto and now is in possession of the same. That the defendant caused to be paid to said Cone the said sum of $1,200 to be applied on said trust deed and notes *to said Garrels,* and that said sum of $1,200 so paid on said notes is much more than a *pro rata* part of said indebtedness on all of said land described in the bill agreeable to the value of said lands, and that the other lands described in the bill are ample security for the balance due on said notes and trust deed. And that by reason of the aforesaid agreement of said Cone to release said forty acres, the defendant

took no security from said Meyer that he said Meyer, would pay off and discharge said trust deed upon said forty acres, and that said Meyer has no more means than is exempt under the exemption laws of this State. The defendant further denies the allegation that no part of said notes have been paid off and discharged, but alleges that the complainant Cone, *agent and collector for said Garrels*, has received besides $1,200, $800 in all, $2,000 or more on said notes, which said sums are credits to be allowed on said notes. The court below found for complainant and decreed a foreclosure as prayed, except as to the forty-acre tract claimed by appellee Morton, which it held was released, etc. On the hearing the complainants read in evidence the notes with the indorsements thereon, as set out in Exhibits "A," "B," "C" and "D" to the bill. Also the deed of trust, with the certificates of acknowledgment and recording, as set out in "Exhibit E." The defendant thereupon testified in his own behalf, as follows: I and one Wyatt bought 400 acres of land from George C. Meyer for $4,250; of this land forty acres were covered by the deed of trust involved in this suit, being the same forty acres described in the answer. And there was a mortgage on the rest of the land purchased in favor of F. Ryhiner & Co. for $3,000 which was assumed and paid off. We paid the money to George W. Cone, the agent of F. Ryhiner & Co., and he procured a release for the same and did all the business. The principal and interest was all received by him; we did not know any one else in the whole transaction, and the balance of the money we paid to George C. Meyer. This money, the $1,200, was to be used to get a release of the forty acres. I had made the contract to purchase, with Meyer, and then I went to Nashville and saw Mr. Cone; did not see him the first time and made the second trip, when I saw him, and he promised that if he got the $1,200 that I was to pay to Meyer for this land that he would procure a release of these forty acres, but said it would be some time. He said he was glad that I made the arrangement, because he considered the $1,200 more than the *pro rata* share of the mortgage. I may not have spoken

to Cone about a release till after I paid the $1,200, but I am pretty sure I did, and paid Meyer the money to deposit in the Salem bank subject to Cone's order.    Soon after, I got possession of the forty acres from Meyer and have been ever since in possession. The forty acres are worth about $500 or $600. Mr. Cone promised me to get the forty acres released several times, but never would fix a time, always saying it would take some time, until the last time I spoke to him when he said he would get the release "by the first day of next January," which was January 1, 1886.   George C. Meyer testified:   I received $1,200, mentioned by the defendant Morton, and deposited them on January 29, 1883, in the bank at Salem, Ill., for George W. Cone, to be applied on this mortgage to release Morton's forty acres I sold him.    Afterward, about the next day, I deposited $800 more for the purpose of being credited on the same mortgage.   Cone promised to get a release for the forty acres sold to Morton, and pretty soon.  Morton bought the land from me in December, 1882.   I wanted to stop the interest on the mortgage.   Cross-examined :   Cone told me to pay in the money and he would see it applied on three notes to keep interest paid and on the principal when due.    They bought the 400 acres at $12 per acre.   Cone told me that Ryhiner & Co. were broke, and I would lose the whole of it unless I took some notes and mortgages on land in Jefferson County, and I took them rather than lose it all. I went to see about these, and learned the notes and mortgages he gave me were worthless.   In that way Cone paid me the whole money. We made a final settlement on January 29, 1886, and I then gave him this receipt. Cone gave me, at the settlement, $1,250 in securities, and he had paid interest for me on this mortgage for several years, and he accounted to me for the whole $2,000 in that way, and I took them because he told me I would get nothing unless I settled that way as Ryhiner & Co. were broke all to pieces. These forty acres I sold to Morton are worth about the tenth part of the whole 340 acres included in the deed of trust involved in this suit.   It was here admitted between the parties that the money deposited by Meyer in the bank as above

stated was afterward drawn out by Mr. Cone.    George W. Cone testified:   Hugh R. Morton never spoke to me about obtaining a release for these forty acres until long after the money had been paid over to him, and I never promised absolutely to get him a release.    I never was agent for any of the assignees of the notes involved in this suit.    I was agent for F. Ryhiner & Co. to collect the interest but not the principal.    I was not agent for F. Ryhiner & Co. in receiving these $2,000 from Meyer, but that was a matter exclusively between me and Mr. Meyer.    I received the money to invest for Meyer until the mortgage should be due, and I used the interest accruing on the investment in paying interest on the mortgage involved in this suit.    I invested that money in April, 1883.    Used the blank notes of F. Ryhiner & Co. because I liked the form the best, and I assigned the notes to Meyer at the time but kept them in my safe until this receipt was signed.    These notes, taken for the $2,000 paid to me by George C. Meyer, were made payable to F. Ryhiner & Co. and remained in my hands until two days after this bill was filed, and in them was included the $1,200 paid by Morton to Meyer, if I got that money, and then on the 29th day of January, 1886, I delivered the notes to Meyer and he gave me the receipt identified by Meyer and which reads as follows:

McLEANSBORO, ILLS., Jan. 29th, 1886.   Received of W. G. Cone, sixteen hundred and twenty-three dollars in full of said amount deposited in Salem National Bank by me to credit of account of said Cone.    This rec't to be a full settlement of said amount and accrued interest on same.    Said deposit was made 1883.                               GEORGE C. MEYER.

I told him I could not take money before it was due. Cross-examined:   I had authority to assign the notes to Meyer. I had been paying interest for Meyer on these notes involved in this suit, and when I made final settlement with Meyer I paid him part in money.    I do not think I ever promised Morton to get a release of his forty acres in this mortgage, but did promise I would get it if I could.    Don't think I told him I would get it by January 1, 1886.

Messrs. W. C. Kueffner and T. E. Merritt, for appellant.

Ryhiner & Co. were constituted the agents of the assignees of the notes for the sole purpose of collecting the accruing interest and principal "against receipt of said F. Ryhiner & Co. therefor, and the receipt of said F. Ryhiner & Co. for interest and principal to be good and valid toward any subsequent owner of said notes."

This was a special limited agency, to be exercised in a special manner. It gave Ryhiner & Co. no power of substitution, and no power to do any act other than that specially authorized, and persons dealing with them were bound to inform themselves of the extent of their authority.

"Where parties deal with an agent having written authority, they must inform themselves of its extent and its limitations." Rawson v. Curtiss, 19 Ill. 456.

An agent to collect a note has no power to extend the time of payment.    Lawrence v. Johnson, 64 Ill. 351.

"An agent appointed for a special purpose can not go beyond the scope of such appointment and bind his principal." Denman v. Bloomer, 11 Ill. 177; Baxter v. Lamont, 60 Ill. 237.

Persons dealing with agents must know their authority.    C. & G. E. R. R. Co. v. Fox, 41 Ill. 106 ; Dutcher v. Beckwith, 45 Ill. 460 ; Peabody v. Hoard, 46 Ill. 242 ; Davidson v. Porter, 57 Ill. 300 ; Reynolds v. Ferree, 86 Ill. 570.

Mr. Henry C. Goodnow, for appellee.

The mortgagor, Meyer, sold part of the mortgaged land to Morton, with the agreement that it would be released, without any notice, actual or constructive, that the notes had been assigned.

The mortgage not being negotiable paper, the purchaser of notes takes it as an incident and subject to all equities in favor of the mortgagor and his grantees.    Olds v. Cummings, 31 Ill. 188 ; Haskell v. Brown, 65 Ill. 29 ; Bryant v. Vix, 83 Ill. 11 ; Silverman v. Bullock, 98 Ill. 11 ; Melendy v. Keen, 89 Ill. 395, 404.

The mortgagor, to release himself from liability on his note, must see that he pays the money to the holder of the note

who has received it by assignment before maturity, but not so to discharge the mortgage because it is not assignable at law. Towner v. McClelland, 110 Ill. 542, 551.

WILKIN, P. J.    The only question presented for our decision is, did the court below err in decreeing that the forty acre tract, owned by Morton, is held by him discharged of the lien of the trust deed sought to be foreclosed.   In the foregoing statement of the case so much of Morton's answer raising that issue and substantially all the evidence bearing upon it is set out, and a casual examination thereof will, we think, make clear our reasons for reversing the decree.   The argument of counsel seems to proceed upon the assumption that the defense set up is that Ryhiner & Co., after the assignment of the notes secured by the trust deed, by their agent Cone, agreed to release, or procure a release of the forty acre tract, and authorities are cited on both sides as to defenses available to the mortgagor or his grantee against the assignee of the debt secured by the mortgage, growing out of equities between the defendant and the mortgagee, appellee relying upon the case of Towner v. McClelland, 110 Ill. 542, to sustain the decree, while appellant, arguing on the same hypothesis, cites Keohane v. Smith, 97 Ill. 156.   Applying the elementary rule of practice both in law and equity, that the allegation and proof must agree, the question discussed does not arise.   By his answer the defendant, Morton, did not pretend that in his negotiation for a release he dealt with Cone as the agent of Ryhiner & Co.   On the contrary he avers in every part of it that he was the agent of the complainant, Garrels, and that whatever contract he made with him was in that capacity. By his answer he admits that at the time he contracted with Cone he knew that the complainant, Garrels, was the owner of the negotiable notes secured by the trust deed, which were then not due, and by that averment he is bound.   How can it then be said that any question as to the equities between Ryhiner & Co. and Morton is involved in the decision of this case?   The issue, submitted to the court, was whether or not the legal holder of the notes and the equitable owner of the

trust deed, Garrels, by his agent, George W. Cone, agreed to procure the release. On this issue the burden of proof was upon appellee Morton. There is no evidence in the record tending to prove it. Cone swears positively that he "never was agent for any of the assignees of the notes involved in this suit." Whatever equitable rights appellee Morton may have under a proper state of pleading, this decree can not be sustained. It is therefore reversed and the cause remanded with directions to the court below to allow the defendant, Morton, to amend his answer if he shall so desire.

*Reversed and remanded.*