FRIEDERICH SCHULTZ *v.* LIEB SROELOWITZ *et al.*
and
JOHN C. KRASA *v.* SAME.

*Opinion filed June 19, 1901—Rehearing denied October 4, 1901.*

191    249|
  98a  ²201|
e98a  ²203|
  98a  ²205|
  98a  ¹206

191    249|
d198  ²388

191    249|
108a  ²220|
108a  ²223|
108a  ²224|
j108a²225|

1. MORTGAGES—*assigned mortgage is not subject to latent equities of third parties.*  A mortgage is assignable only in equity, and in a proceeding to enforce the lien created by it it is subject to all equitable defenses existing between the original parties, but not to latent equities of third persons.

2. SAME—*when assignee of a mortgage is protected against payments made to trustee.*  The rule requiring the assignee of a mortgage securing notes endorsed in blank to give notice, actual or constructive, in order to protect himself against payments by the mortgagor to the mortgagee, does not extend to subsequent purchasers of the property who assume and agree to pay the encumbrance, and, notwithstanding the assignee has not recorded the assignment or given notice thereof to any one, he is entitled to protection against payments made by the purchasers to the mortgagee in the belief that he still owned the indebtedness.

CARTWRIGHT and BOGGS, JJ., concur in conclusion, only; HAND, J., dissenting.

*Sroelowitz* v. *Schultz*, 86 Ill. App. 341, reversed.

APPEAL from and writ of error to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This was a bill to foreclose a deed of trust in the nature of a mortgage and to set aside a fraudulent release of the same.   The prayer of the bill was granted by the circuit court, but on appeal the decree was reversed by the Branch Appellate Court and the cause remanded, with directions to dismiss the bill for want of equity.  The case is now before us on appeal of Friederich Schultz, the complainant in the bill, and on writ of error sued out by John C. Krasa, one of the defendants.

It appears from the record that on February 14, 1891, said John C. Krasa made his promissory note for $4500, payable to himself five years after date at the office of

Theodore H. Schintz, together with ten interest coupons payable in the same way, and endorsed the same in blank and delivered the same to said Schintz. At the same time he executed and delivered to Schintz, as trustee, his deed of trust on certain real estate to secure the payment of said note and coupons. A month later the complainant, Schultz, purchased and received from Schintz the notes and deed of trust at their face value but took no separate assignment of the deed of trust, nor did he give Krasa, the maker, any notice of the purchase or transfer. The securities were given by Krasa for a loan, the amount of which Krasa received from Schintz after the purchase by Schultz. On the 7th of May following, Krasa sold and conveyed the property so mortgaged by him, to Joseph Miller, subject to said deed of trust, and in and by the deed Miller assumed the payment of said mortgage debt as a part of the purchase money. Afterward, in February, 1892, Miller sold and conveyed the property to the appellees, Lieb and Anna Sroelowitz, and by the deed of Miller to them they assumed and agreed to pay the same mortgage debt as part of the purchase money, in the same terms as Miller had assumed the payment of the same. As the interest coupons matured they were taken by Schultz to the office of Schintz, where he received the money from Schintz. Sroelowitz paid the coupons to and received them from Schintz, supposing him to be the owner and holder of them and of the note and mortgage, he, Schintz, claiming to be such owner. Neither Krasa nor the appellees ever knew, until after the maturity of the principal note, that Schultz was the holder of it or had any interest in it, and it does not appear that Schultz knew of the sale and conveyance of the property by Krasa to Miller, or by Miller to Sroelowitz, until about the same time.

In August, 1895, Schintz notified appellees, the Sroelowitz, that the note would become due in six months, and in pursuance of this notice they went to see Schintz

in November following, and informed him that they could not pay the debt in full but could pay $800 on it. It was then agreed between them and Schintz that they should pay the $800 and execute a new note and mortgage for the balance, $3700. This agreement was carried into effect on December 4, 1895, when the $800 was paid and the new note and mortgage were executed and delivered to Schintz. The appellees were Russians, and were unable to read, write, speak or understand the English language, but understood the German, which Schintz also could speak. Schintz produced two papers having the appearance of a note and mortgage, and told them they were the note and deed of trust they were paying off and that they belonged to him. Appellees asked Schintz to read and explain the papers to them, which he pretended to do in German. They then requested him to cancel them by drawing lines across them, "as they do in Europe," and to give the papers to them; but he said that was not the custom in this country—that they were of no use and he would destroy them. He then tore them up and threw the pieces in the waste basket. Appellees also asked Schintz for "clearance papers," and he told them to come back in a few days; that he would have to go to court to clear the books; that he was too busy then. They called on him frequently afterward for a release, but he put them off from time to time, but finally informed them that the release deed had been filed and that everything was all right. The release was in fact filed for record on February 19, 1896. The note had become due a few days before, on February 14, and when Schultz presented it at Schintz's office for payment, Schintz told him that Krasa was not then ready to pay but was about to make a new loan to get the money, and that he, Schultz, would have to keep the papers and wait half a year longer; that his security was perfectly good. Schultz kept the note and deed of trust over a year after it became due, until some time in 1897, when he learned

that Schintz, as trustee, had executed and filed a release deed releasing the property from the lien more than a year before. After the payment of the $800 and the making of the note and mortgage for $3700, appellees paid interest to Schintz on that note, and not on the original note and deed of trust. Schintz was insolvent, and had sold and assigned the $3700 note and mortgage. Schultz filed his bill, as above stated, to set aside the release and to foreclose his deed of trust, making Krasa and appellees parties defendant.

ARNOLD TRIPP, for appellant Schultz.

IVES, MASON & WYMAN, for plaintiff in error Krasa.

MOSES, ROSENTHAL & KENNEDY, for appellees and defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This case is the outgrowth of a fraudulent transaction of Theodore H. Schintz which must result in loss to one of two or more innocent parties. It is often a difficult matter in such cases to determine upon which of such parties the loss should fall. The suit was brought by Schultz to foreclose, as a mortgage, the deed of trust, which, with the note, had been assigned to him by Schintz. It is well settled that the mortgage was assignable only in equity, and that in a proceeding to enforce the lien created by it, it is subject to all equitable defenses existing between the original parties but not to the latent equities of third persons. The rule is, that the assignee, to protect himself from payments by the mortgagor to the mortgagee, must give notice to the mortgagor, actual or constructive, of the assignment to him. (*Olds* v. *Cummings,* 31 Ill. 188; *McAuliffe* v. *Reuter,* 166 id. 491; *Towner* v. *McClelland,* 110 id. 542; *Buehler* v. *McCormick,* 169 id. 269; *Johnson* v. *Carpenter,* 7 Minn. 120.) In the case at bar, if Schultz, the assignee, had made inquiry of Krasa at the

time of his purchase of the securities, or had given him notice of the assignment, no reason would have been disclosed why the notes should not be paid; but in case Krasa had afterward made payments on his obligation such notice would have prevented payment to the wrong person, or at least Schultz would have done all that the law required, and he would have been protected in his right to enforce the lien. But Krasa never made any payments, and this is not a case where the maker has made payments to his mortgagee after the latter had assigned the note and mortgage, not knowing of such assignment, but, as we view the case, it is one where a third person, unknown to the assignee, had assumed and agreed to pay the mortgage debt, and in undertaking to comply with his agreement and make such payment has paid the wrong person. Schultz, prior to such payment, had no knowledge, actual or constructive, that appellees had purchased and procured conveyance of the property to them and had assumed and agreed to pay the mortgage debt. He was not charged with such knowledge by the recording of the deed to appellees, inasmuch as it was subsequent to the recording of his deed of trust. True, had he taken a written assignment of the mortgage and placed it on record it would have been notice to subsequent purchasers, as appellees were, of the assignment; but without any written assignment the mortgage, as an incident to the note, passed to him as assignee, and was enforceable in equity as an equitable assignment. His deed of trust was not only of record and so was notice to appellees when they purchased, but they had expressly assumed and agreed to pay the debt which it secured,—not as a debt to Schintz, but a debt evidenced by a note payable to the order of the maker and by him endorsed in blank, fully described in the deed of trust. Appellees were bound by their agreement to pay this debt to the one entitled to receive payment, and they would not be discharged from that duty by the fraud

of Schintz, in the absence of the fault or negligence of Schultz. As we have seen, Schultz was not bound to give notice to appellees of the assignment, but only to Krasa, the mortgagor. That was a duty which he owed to Krasa—not to third persons of whose interests he had no knowledge. Had he notified Krasa of the assignment, it could not, from such notice, be presumed that the information would have been imparted to appellees and the fraud of Schintz thus prevented.

It follows that no connection exists between the failure of Schultz to give notice to Krasa and the fraud of Schintz in procuring payment from appellees. Why, then, should the lien in favor of Schultz be defeated because the appellees allowed Schintz to practice a fraud on them? Thus, it was said in *Olds* v. *Cummings, supra,* (p. 192): "There are many cases in which the assignees have been protected against latent equities of third persons, whose rights, or even names, do not appear on the face of the mortgage. And the reason is, that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid; but he should not be required to inquire of the whole world, to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage, as, for instance, a *cestui que trust.*" Then, again, it was said in *Towner* v. *McClelland, supra* (p. 551): "Where a mortgage is assigned, and the mortgagor, without notice, pays the payee, who has parted with the note, that will discharge the mortgage, and in a suit to foreclose, such payment may be set up in bar of a decree for its foreclosure. The mortgagor, to release himself from liability on his note, must see that he pays the money to the holder of the note, who has received it by assignment before maturity, but not so to discharge the mortgage, because it is not assignable at law. The equitable assignee, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former no-

tice, actual or constructive, of its assignment. He may place the assignment on record or give notice of the assignment to the mortgagor." And in *Buehler* v. *McCormick, supra,* it was said (p. 275) that "the purchaser knows from the papers who the mortgagor is, and may, by notice and inquiry, protect himself in making the purchase much more readily than the mortgagor may, if for any reason he is unable to obtain at once the cancellation and return of his obligations. The assignee is charged with knowledge of the law that a mortgage is assignable only in equity and subject to the equities between the original parties to it, and he cannot relieve himself from the consequences of his own negligence by simply showing that the mortgagor failed to take up the note and mortgage when he paid the debt to the then legal holder."

But we are unable to see how this equitable doctrine can be applied to the case at bar, for, as before said, the assignee, Schultz, had no knowledge that appellees had any interest in the matter or had assumed Krasa's obligation to pay the mortgage debt. Their equities must be classed with those mentioned as the latent equities of third persons. (*Silverman* v. *Bullock,* 98 Ill. 11.) As between appellees and Krasa, appellees, by their assumption of the mortgage debt, became principals and Krasa a surety. It being their duty to pay, they could not release themselves or the mortgaged property in their hands from their obligation, and leave the burden still resting upon Krasa as the maker of the note. Krasa's interest is to maintain the lien, and not to defeat it. The property became the primary fund for the payment of the debt. This court said in *Drury* v. *Holden,* 121 Ill. 130, that "it is well established that when a party purchases premises which are encumbered to secure the payment of indebtedness, and assumes the payment of the indebtedness as a part of the purchase money, the premises purchased are in his hands a primary fund for the payment of the debt, and it is his duty to pay it." How

did appellees discharge this duty? They simply relied on Schintz's representations that he was the owner and holder of the note and mortgage, and, knowing that they could neither read nor understand the English language, they depended on Schintz's explanations of the contents of the papers which he produced and destroyed in their presence, and paid him. The fact that Schintz declined to cancel and deliver to them the note and deed of trust on their request, but destroyed them instead, should have been sufficient to arouse their suspicions as to his good faith in the transaction and to put them on their guard. Ordinary care, under the circumstances, would have required them to procure some competent person to look into the matter for them. This they did not do, but relied wholly on the swindler who was then engaged in perpetrating the fraud. It is no answer to say that if Krasa had been so·imposed on or had paid Schintz without taking up the securities, such payment, as between him and Schultz, in the absence of notice of the assignment, would have operated to discharge the lien, for, as before shown, appellees were not entitled to notice and they took the property subject to the encumbrance, and by their contract, in legal effect, agreed that it should stand as the primary fund in their hands for the payment of the mortgage debt. They were at their own peril bound to pay the debt to the one entitled to receive it. There was no proof that Schintz was the agent of Schultz, and their payment to Schintz was not good as to Schultz, Schintz's assignee, nor was it a compliance with their obligation to Krasa, who parted with his land upon the pledge that it should be held for the payment of his debt.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*

CARTWRIGHT and BOGGS, JJ., concur in the conclusion, only; HAND, J., dissenting.