Carey v. Kutten.

## Michael Carey et al. v. John Kutten.

1. Payment—*Of a Mortgage Debt After Assignment by the Mortgagee of the Mortgage Without Notice to the Mortgagor.*—A payment of a mortgage indebtedness by the mortgagor to the mortgagee after an assignment of the notes evidencing the indebtedness and the mortgage securing them to a third party, is good in equity as against the assignee,

when such assignee has given to the mortgagor no notice, actual or constructive, of such assignment.

Mortgage Foreclosure.—Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1901. Reversed and remanded. Opinion filed November 21, 1901.

Statement of Facts.—Appellant Michael Carey being indebted on his note to Theodore H. Schintz, and desiring to pay off that indebtedness and secure an additional loan, on June 6, 1889, executed his note for $1,000, payable to the order of himself four years after date, with interest. He indorsed said note and interest notes in blank and delivered them to Theodore H. Schintz, and on the same date, June 6, 1889, to secure the payment of the same, executed jointly with his wife, Ellen Carey, a trust deed to said Schintz, as trustee, which was duly recorded June 15, 1889.

On June 6, 1893, being the date of maturity of said principal note, the defendants, Michael and Ellen Carey, executed what purports to be an agreement for the extension of the time of payment on said note for four years from said date, June 6, 1893. It was not recorded and was held by Schintz, to whom it was delivered, together with eight new interest notes for $30 each, executed by Michael Carey. From the time of the execution of said $1,000 note, Carey paid the interest as it fell due to Schintz, and continued to do so after the execution of the extension agreement, the notes, by their terms, being payable at Schintz's office.

In the fall of 1893, the appellee, John Kutten, purchased the note for $1,000, together with the interest notes and extension agreement, and received the same, with trust deed of June 6, 1889, from Schintz. This assignment to Kutten was not recorded, and Carey was not notified of the same and had no knowledge whatever of the transaction, but continued to pay his interest at the office of Schintz, where Kutten would call and receive the same.

In May, 1897, when said $1,000 note was about to become due under the terms of the extension agreement, Schintz notified Carey in writing that the same would be due and

payable at his office on June 6, 1897. Carey thereupon advised Schintz that he desired to extend the time of payment, and also that he wanted an additional loan of $200, and it was arranged that Schintz should make a new loan of $1,200 on the property in question, take up and cancel the $1,000 indebtedness, and pay Carey the balance. To evidence the $1,200 indebtedness, and to secure the same, Carey accordingly, on May 27, 1897, executed his principal note for $1,200, payable five years after date to the order of himself, with interest notes or coupons and a trust deed (signed also by his wife, Ellen Carey,) to said Schintz as trustee.

On the same day, May 27, 1897, Mrs. E. K. Ware called at Schintz's office, received the notes executed and indorsed by Carey, and gave therefor to Schintz her check payable to said Schintz for $1,200, the trust deed of May 27, 1897, being left by her with Schintz, and recorded on that day.

The $1,000 note became due on June 6, 1897, and on June 8, 1897, Carey was furnished by Schintz with a statement of his account, containing a credit, " by loan $1,200," and various charges incident to the making of the $1,200 loan, and also a charge, " to old loan canceled, $1,030," and showing a balance due Carey of $125.20 out of the $1,200. Carey did not ask for nor receive his canceled note from Schintz, supposing, as had been done in his previous dealings with him, it would be retained with the other securities for the $1,200 loan.

On June 12, 1897, Schintz, as trustee, executed a release deed to Carey, conveying all interest acquired by the trust deed of June 6, 1889, to the property in question, which was recorded June 14, 1897.

On July 19, 1897, Schintz failed. The $1,000, part of the $1,200 loan, which should have been applied to take up the Kutten note, appears to have been converted by Schintz to his own use.

Several days after the failure of Schintz, Kutten having learned by a search of the records that the trust deed of June 6, 1889, had been released, called on Carey about the

matter, and this was the first intimation Carey had that said $1,000 note had been assigned to Kutten.

On July 31, 1897, Michael Carey and Ellen Carey, his wife, by warranty deed, conveyed to defendant Margaret Casey the premises in question, which deed was duly recorded in the recorder's office of Cook County, on August 2, 1897. On August 5, 1897, Kutten filed his bill in the Superior Court of Cook County, praying that said release deed of June 12, 1897, be set aside, and the trust deed of June 6, 1889, be declared a subsisting lien and foreclosed.

On March 28, 1899, the case was referred to a master in chancery, and on November 2, 1899, the master filed his report, together with the testimony taken by him, and on December 8, 1899, a decree was entered overruling the exceptions to said report and finding in conformity with recommendation of the master, that the equities are with the complainant, Kutten; that he has a valid and first lien on the property in question, and foreclosing the same, together with that of the trust deed of May 27, 1897, held by Mrs. Ware, which is declared a valid lien subject to that of complainant.

From this decree Michael Carey and Margaret Casey prosecute the appeal here.

THOMAS McENERNY, attorney for appellant Michael Carey.

GEORGE W. WILBUR, attorney for appellant Margaret Casey; JOHN F. MAHON, of counsel.

C. MILNE MITCHELL, attorney for appellee.

MR. JUSTICE SEARS delivered the opinion of the court.

The question presented upon this appeal is as to whether a payment of a mortgage indebtedness by the mortgagor to the mortgagee, after assignment by the mortgagee of the note evidencing the indebtedness and the mortgage securing it to a third party, will be held good in equity as against the assignee, when such assignee has given to the mortgagor no notice, actual or constructive, of the assignment.

Carey v. Kutten.

Appellant Carey paid Schintz, the original mortgagee, the amount of the indebtedness secured by the trust deed of June 6, 1889, after Schintz had assigned the note and trust deed to appellee, Kutten. But appellee, Kutten, had not recorded the assignment in the office of the recorder of deeds, nor had he given any notice of the assignment to appellant Carey. The question, therefore, is, does the doctrine announced in Olds v. Cummings, 31 Ill. 188, here apply to make the payment good in equity as against appellee, Kutten, the assignee of the mortgage? The doctrine first announced in the Olds case has been further defined and applied in a number of subsequent decisions. As stated in Buehler v. McCormick, 169 Ill. 269, "It is apparent that all that has been said in the different cases can not be fully reconciled." The doctrine announced in Olds v. Cummings, to the effect that an equity which might be asserted by a mortgagor as against the original mortgagee, could as well be asserted against an assignee of the mortgage, was in that case applied only to an equity which existed at the time of the assignment of the mortgage, and which grew out of the fact that the note secured by the mortgage was usurious. But in other and later decisions it has been announced that the same doctrine applies equally to an equitable defense based upon payment of the mortgage debt by the mortgagor to the mortgagee after the mortgagee had assigned the note and mortgage to another, and where the assignee, seeking by bill in equity to foreclose, had given no notice to the mortgagor of the assignment to him before payment was made to his assignor.

The cases in which this more extended application of the doctrine of Olds v. Cummings has been announced, are : Towner v. McClelland, 110 Ill. 542; McAuliffe v. Reuter, 166 Ill. 491; Buehler v. McCormick, 169 Ill. 269; and Schultz v. Sroelowitz, 191 Ill. 249.

In Towner v. McClelland, *supra*, the payment of the mortgage debt was effected through a transaction which occurred prior to the assignment of the mortgage, and the

precise question here presented did not, therefore, arise. The court, in holding that the payment was good in equity as against the assignee, said:

"Not only so, but where a mortgage is assigned, and the mortgagor without notice pays the payee, who has parted with the notes, that will discharge the mortgage, and in a suit to foreclose, such payment may be set up in bar of a decree for its foreclosure. The mortgagor, to relieve himself from liability on his note, must see that he pays the money to the holder of the note, who has received it by assignment before maturity, but not so to discharge the mortgage, because it is not assignable at law. The equitable assignee, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment. He may place the assignment on record, or give notice of the assignment to the mortgagor."

In McAuliffe v. Reuter, *supra*, the arrangement between the mortgagor and mortgagee, by which deposits in the bank of the mortgagee were to be received as credits upon the mortgage note, was made before the assignment of the mortgage note by the mortgagee, although the payments were made after the assignment. And in that case the doctrine, as announced in Olds v. Cummings and as more broadly announced in Towner v. McClelland, *supra*, was adhered to and applied to defeat a foreclosure in equity by the assignee.

In Buehler v. McCormick, *supra*, the assignment of the mortgage was made by the mortgagee after the note secured by the mortgage had been fully paid. In that case the chief question presented and considered was as to whether a note made payable to the order of the maker and by him indorsed in blank and delivered to the mortgagee, would, as a mortgage debt, be treated as within the application of the rule announced in Olds v. Cummings. The court held that no distinction could be made as between such a note and one payable in terms to the mortgagee, so far as the application of the doctrine in question was concerned, and in effect that a payment to the one who originally took the note thus drawn and secured by mortgage, was a payment to the mortgagee. In other words, the

court declined to hold "that by the terms of the instrument all the attributes of negotiable paper were imputed to this deed of trust," and the court did hold that such paper did not fall within the exception made as to accommodation paper, as declared in Miller v. Larned, 103 Ill. 562.

In Schultz v. Sroelowitz, *supra*, the payment of the mortgage note which was sought to be asserted as a defense in equity against a foreclosure of the mortgage by an assignee of the note, was made, not by the mortgagor, but by a purchaser from the mortgagor who had assumed and agreed to pay the note. The payment was made after the assignment. The court held that the payment did not constitute an equitable defense which could be asserted against the assignee of the mortgage under the doctrine of Olds v. Cummings; but the decision is put upon the ground only, that the payment was made by another than the mortgagor, and not at all upon the ground that the payment was made after the assignment. The ground of the decision is that the giving of a notice by the assignee to the mortgagor, which seems to be required by the decisions above cited to protect the assignee of the mortgage against the effect in equity of a payment after the assignment to the mortgagee, would have been of no avail, for the mortgagor was no longer in interest after his grantee of the mortgaged premises had undertaken the payment of the mortgage debt. The equities of the one who had assumed the debt and paid it, were to be classed as latent equities of third persons, against which the doctrine of Olds v. Cummings has no application. Silverman v. Bullock, 98 Ill. 11.

And the court again announces the rule declared in the cases above cited, "that the assignee, to protect himself from payments by the mortgagor to the mortgagee, must give notice to the mortgagor, actual or constructive, of the assignment to him."

Against the force of these various announcements by the Supreme Court, the learned counsel for the appellee presents and relies upon the decision in Keohane v. Smith, 97 Ill. 156.

In that case it appeared that one Sullivan had executed and delivered a note and mortgage upon property owned by him to secure a debt to one Runyan. Shortly after it was made the note was sold by Runyan to Mrs. Keohane. Afterward Sullivan made another note and mortgage, securing it upon the same premises, to Smith, to secure a loan of money by Smith to Sullivan. A part of the money loaned by Smith was to be used to pay off the Runyan mortgage debt, so that it should be released as a lien prior to that of Smith. The money was paid to Runyan for that purpose but was not so applied, and Mrs. Keohane received no part of it. The conflict of interests in the case arose upon the attempt of Mrs. Keohane to foreclose her mortgage and the claim of Smith that the Keohane mortgage had been discharged by the payment to Runyan, and that his, Smith's, loan, was not subject to the Keohane mortgage. As between the two claiming as lienors the Supreme Court held that the payment to Runyan did not operate in equity to extinguish the rights of the assignee of Runyan under the mortgage; that Smith and his attorney, in seeing to the application of the money loaned by him, had not exercised "the usual care that an ordinarily prudent person observes in the transaction of his own business;" that equity will not postpone the interests of one who stands fair and who has omitted no duty devolving on him, to the interests of one whose negligence made it possible for the loss to occur; and that in this instance the negligence of Smith in failing to obtain the unmatured note when payment was made to Runyan made the loss possible. No reference is made in the decision to the application of the rule announced in Olds v. Cummings. No question of the rights of the mortgagor is considered by the court. Only the conflicting rights of the two mortgagees are considered, and as between them the court finds that the payment to the mortgagee after assignment of the mortgage did not operate to bar the rights of the assignee.

In the case at bar, as in the Keohane case, there are conflicting claims under two mortgages. Kutten, the assignee of the note secured by the original trust deed

made to Schintz, claims under the one, and Mrs. Ware, the owner of the mortgage note given by Carey in part to pay the Schintz mortgage debt, claims under the other.     But there is this difference between this case and the Keohane case, that in the latter Smith was aware of the prior mortgage to Runyan, and undertook, through his agent, to apply part of his loan to its payment, but in so doing acted so negligently that the money was misapplied by Runyan. Here, Mrs. Ware had no actual knowledge of any existing mortgage to Schintz.     In the Keohane case, as in the Sroelowitz case, the equity was sought to be asserted by another than the mortgagor, viz., another lienor under another mortgage.     Here, while the case presents conflicting interests of two mortgagees, yet the equities arising from the payment by Carey to Schintz were sought to be availed of by Carey, the mortgagor, as well as by Mrs. Ware, in the court below.     In this court Carey alone appears as appellant, Mrs. Ware not having joined in the appeal. By the decree below, the property mortgaged by Carey is subjected to both mortgages, the mortgage made to Schintz and assigned to appellee, Kutten, having been given a priority over that held by Mrs. Ware.     It is not without difficulty that it can be determined whether the facts of this case bring it within the rule of Keohane v. Smith, as above stated, or make it a case to be controlled by Olds v. Cummings and the cases cited which have followed that decision. If the controversy arose solely between appellee, Kutten, as holder of the mortgage first made, and Mrs. Ware as holder of the mortgage secondly made, it might perhaps be held that the Keohane case governed, upon the ground that Mrs. Ware, in loaning her money upon the property, or in purchasing a mortgage, should have seen to it that the money loaned upon the mortgage had been applied to pay the prior mortgage to the person holding the note by which it was evidenced.

But the case here presents squarely rights of the mortgagor.     He is contending against a decision by which his property is subjected to the lien of both of these mortgages,

one of which was given to pay the other. He has the right to invoke the rule of Olds v. Cummings if that rule is applicable to a case where payment is made to the mortgagee after the mortgage note has been assigned, without notice to the mortgagor, as well as when the payment has preceded the assignment.

In view of the various announcements by the Supreme Court to the effect that such a payment will operate to raise an equitable defense to a foreclosure by the assignee, when the assignee has not actually or constructively given notice to the mortgagor of the assignment, we hold that the defense of appellant Carey was good as against the foreclosure suit of appellee, Kutten. We can not regard all of these announcements as *obiter dicta*. It is true that in several of the decisions, as above indicated, it was not necessary to decide this question, as in those cases the payment did precede the assignment. But in the Sroelowitz case the payment was, as here, after the assignment, and the question of its effect was squarely presented to the court. The court was called upon to pass on the question of the effect of a payment subsequent to the assignment, as well as the effect of a payment by another than the mortgagor. And the court held in clear terms that a payment to the mortgagee after assignment would constitute a good defense for the mortgagor in equity against foreclosure by the assignee when the assignee had failed to give any notice to the mortgagor, actual or constructive, of the assignment. It could not be held here, as in the Sroelowitz case, that the equities arising from the payment by Carey to Schintz are being asserted by others than the mortgagor, for while the record shows conveyance by Carey of the property in question to another, yet the decree finds that such conveyance was colorable only, and that Carey is still in equity the owner of the property.

We are therefore of opinion that the learned chancellor erred in decreeing that appellee, Kutten, was entitled in equity to an enforcement of his mortgage as against appellant Carey.

The decree is reversed and the cause is remanded.