Anton Napieralski *et al.*

*v.*

Peter Simon.

*Opinion filed October 25, 1902.*

1. Evidence—*what does not show that trustee obtained loan for another party.* The fact that the trustee in a deed of trust, from whom the grantors obtained the money secured by the deed, charged them a commission on the loan and on the extension, does not show that he obtained the loan for another party, where the notes were made to his order and he received payments of interest, etc., without anything to show that he was not the lender.

2. Mortgages—*purchaser of trust deed must, to protect his rights, give notice to grantor.* One purchasing notes and a trust deed securing them must give notice to the grantor if he desires to preserve his rights under the trust deed against payments made to the former holder. (*Schultz* v. *Sroelowitz,* 191 Ill. 249, distinguished.)

*Simon* v. *Napieralski,* 100 Ill. App. 240, reversed.

Appeal from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. Tuthill, Judge, presiding.

A. G. Anderson, Marcus W. Russ, and Frank W. Young, for appellants.

Lackner, Butz & Miller, for appellee.

Mr. Justice Carter delivered the opinion of the court:

The appellee, Simon, brought his bill in the circuit court of Cook county to set aside a fraudulent release, made by Theodore H. Schintz, the trustee of a trust deed, and to foreclose said trust deed as a mortgage. The court dismissed the bill on the hearing, but on appeal the Appellate Court reversed the decree and remanded the cause, with directions to enter a decree in accordance with the master's report, which recommended a decree as prayed in the bill.

The facts, in substance, are, that on October 23, 1886, the appellant Anton Napieralski obtained from Schintz a loan of $3000 by giving his note for that amount, payable at Schintz's office in five years to the maker's order, and endorsed by him in blank, with ten interest coupons, all secured by a deed of trust on real estate, executed by himself and wife. As these coupons matured Schintz notified appellants, and they called at Schintz's office and paid the amount due and Schintz stamped the notice as paid. When the note became due, in October, 1891, appellants, in pursuance of notice from Schintz, came to his office, and it was there agreed between them that the note and mortgage should be extended for five years, and Schintz prepared a written agreement to that effect, which was signed only by appellants. Appellant Anton executed also ten new coupons for the interest for the extended period. These interest coupons were also paid to Schintz by appellants as they matured. In the spring of 1894, appellee, Simon, purchased the note and deed of trust from Schintz and thereafter received payment of the interest from him. There was no evidence that any one but Schintz owned or had any interest in the securities up to that time. He must therefore be regarded as having been the legal holder of them until he sold and delivered them to Simon. Simon did not notify appellants, and they had no knowledge of the transfer or that Schintz had ceased to be the owner. On October 21, 1895, appellants paid Schintz, in addition to the interest, $200, which, in accordance with a previous agreement, he was to apply on the principal of the note when it should fall due, allowing appellants, in the meantime, five per cent interest on the payment. In September, 1896, Schintz notified appellants that the mortgage debt would be due on the 23d of the following month and would have to be paid. Appellants called at his office, and it was agreed that after deducting the $200 previously paid there would be due $2800 of the principal of the note, and that Schintz

should procure two other loans for appellants on the same property, one for $2500 and the other for $300, from parties who Schintz said would furnish the money, and that these amounts should be applied by Schintz to extinguish the first mortgage debt. In pursuance of this agreement appellant Anton executed the two notes, one for $2500 and the other for $300, payable to his own order and by him endorsed in blank, as before, and he and his wife, Victoria, secured each of said notes by a separate deed of trust to Schintz, as trustee, on the same property. In October, 1896, before the date for payment of the mortgage debt of $3000, Schintz sold and delivered the $2500 note and trust deed to one Auten and the $300 note and deed of trust to one Diedesch, (both of whom were made defendants to appellee's bill,) and Schintz received therefor, in the aggregate, $2800, which, with the $200 previously paid to him, he had agreed should satisfy the principal of the first mortgage debt. On October 23, 1896, on a settlement between Schintz and appellants, after applying these sums there was found to be a balance due Schintz of $16.50 on account of interest on said first loan, and including a charge of $3.50 for the expenses of a release. This amount appellants paid to Schintz on October 24, and thereupon Schintz executed, acknowledged and delivered to them his release deed releasing their property from said first mentioned deed of trust. This release Schintz, at the request of appellants, soon after caused to be placed on record. According to the testimony of appellants, Schintz had the original trust deed in his possession when the settlement and release were made, but appellee testified that it had never been out of his possession since his purchase, in 1894.

The evidence shows that for the original loan and for the extension, as well as for the subsequent loans, appellants paid Schintz two and one-half per cent as commission on the amount loaned, and it is contended that it was thus established that Schintz was merely the agent

of appellants in obtaining the loans from others, and that appellants must suffer the loss caused by the breach of trust of their own agent; that when one of two innocent persons must suffer loss because of the wrongful act of a third person, the loss must fall on the party who gave such person power to commit the wrongful act. The fact that Schintz demanded and received from the appellants a commission of two and one-half per cent for the first loan and the same amount for its subsequent extension does not, of itself, prove that he procured the loan for another. When all of the evidence is considered, it proves but little more than that Schintz improved the opportunity he had to exact this percentage from appellants. There is no evidence whatever that any one but Schintz ever advanced any money for the loan or ever owned or had possession of the note and deed of trust before Simon purchased them, in 1894,—eight years after they were given,—and all the dealings between Schintz and appellants for upwards of ten years after the note and deed of trust were given were had upon the assumption that Schintz was the owner, as he claimed to be. Aside from the rules governing negotiable instruments, and in the absence of notice, appellants were justified, from the evidence, in believing that they were dealing with the owner of their obligations. Such being the facts, the rule applied in *Olds* v. *Cummings*, 31 Ill. 188, *Towner* v. *McClelland*, 110 id. 542, *McAuliffe* v. *Reuter*, 166 id. 491, *Chicago Title and Trust Co.* v. *Aff*, 183 id. 91, *Buehler* v. *McCormick*, 169 id. 269, and other cases, must govern.

This is not a suit at law on a negotiable instrument, but is a proceeding in equity to foreclose a mortgage,—a non-negotiable instrument,—and must be controlled by equitable principles. It was assignable only in equity, and was subject to the same equitable defenses as if sought to be foreclosed by Schintz on his own behalf. It was the duty of Simon to give notice to the maker of the assignment to him, if he would protect himself from

payment to the original holder. Such notice would have enabled appellants to protect themselves from the fraudulent representations of Schintz, by making payment to the true owner. At all events, it would have been a compliance on his part with his duty in the premises. Having failed to give such notice he is in no position to invoke the equitable doctrine that where one of two innocent persons must suffer loss because of the fraud of a third person, the loss must fall on him who by his conduct has put it in the power of such third person to make the loss possible. Simon was in fault in failing to give notice of the assignment to him. No circumstances were shown to lead appellants to believe that Schintz had parted with the papers. In *Towner* v. *McClelland*, 110 Ill. 542, it was said (p. 551): "The equitable assignee, to protect his rights against a payment by the mortgagor to the mortgagee, must give the former notice, actual or constructive, of its assignment."

The case at bar differs materially from *Schultz* v. *Sroelowitz*, 191 Ill. 249, where payment to the original holder was held insufficient to discharge the lien on the ground that such payment was made by a subsequent purchaser of the mortgaged property, who was not entitled to notice of the assignment, but who had by his purchase assumed payment of the mortgage debt and made the property itself the primary fund out of which the payment of the debt should be made. But we see no ground on which this case can be distinguished from those above cited, where the equitable defense here interposed was held good.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*